# **EXHIBIT B**

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

| | |
|---|---|
| VALERIE HALEY, on her own behalf and on behalf of others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>TOMMY BAHAMA GROUP, INC.,<br><br>Defendant. | Case No.: 2:25-cv-01969-BJR<br><br>Honorable Judge Barbara J. Rothstein<br><br>AMENDED CLASS ACTION COMPLAINT<br><br><u>JURY TRIAL DEMANDED</u> |

Plaintiff Valerie Haley, on her own behalf and on behalf of others similarly situated, on information and belief except to her own experiences and matters of public record, complains of Defendant Tommy Bahama Group, Inc., ("Tommy Bahama") as follows:

## I.     INTRODUCTION

1. In 1998, to protect Washington consumers from the annoyance and harassment caused by the burgeoning spam email industry, the Washington State Legislature enacted the Commercial Electronic Mail Act (CEMA), codified at chapter 190 of title 19 of the Revised Code of Washington (RCW).

2. Among other things, CEMA prohibits transmitting a commercial email with "false

AMENDED CLASS
ACTION COMPLAINT – 1

STRAUSS BORRELLI PLLC
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611-4501
TEL. 872.263.1100 • FAX 872.863.1109
straussborrelli.com

or misleading information in the subject line" to the email address of a Washington resident. RCW 19.190.020(1)(b).

3. Defendant Tommy Bahama, a clothing retailer, engages in the precise activity which CEMA prohibits.

4. Tommy Bahama spams Washington consumers, including Plaintiff, with commercial emails whose subject lines employ various tactics to create a false sense of urgency in consumers' minds—and ultimately, from consumers' wallets.

5. This false urgency wastes consumers' time by enticing them to engage with Tommy Bahama's marketing efforts for fear of missing out. It also floods consumers' email inboxes with repeated false notifications that the time to act—*i.e. purchase*—is short.

6. And through this deceptive time-sensitivity, Tommy Bahama falsely narrows the field—steering consumers away from shopping for better deals—to its own products that must be purchased *now*.

7. Plaintiff challenges Tommy Bahama's harassment of Washington consumers with deceptive marketing for violations of the Commercial Electronic Mail Act (RCW 19.190.020) and the Consumer Protection Act (RCW 19.86.020) for injuries caused, additionally seeking injunctive relief against such violations in the future.

## II. JURISDICTION AND VENUE

8. Defendant has invoked this Court's jurisdiction under 28 U.S.C. §§ 1332, 1441, 1446, and 1453.

9. Venue is proper in the Western District of Washington under 28 U.S.C. § 1441 because this district and division embrace the place from which Defendant removed this action, King County Superior Court (Case No. 25-2-26334-7 SEA).

AMENDED CLASS
ACTION COMPLAINT – 2

STRAUSS BORRELLI PLLC
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611-4501
TEL. 872.263.1100 • FAX 872.863.1109
straussborrelli.com

### III.  PARTIES

10. Plaintiff Valerie Haley is a resident of Clark County, Washington.

11. Defendant Tommy Bahama Group, Inc., is a corporation incorporated in Delaware with its principal place of business at 400 Fairview Avenue North, Suite 488, Seattle, WA 98109.

### IV.  FACTUAL ALLEGATIONS

**A.  CEMA protects Washington consumers from deceptive spam emails.**

12. The Supreme Court of Washington has made clear: "[A]ll Internet users … bear the cost of deceptive spam." *State v. Heckel*, 143 Wn. 2d 824, 835 (2001) (en banc).

13. In 1998, the Legislature found that the "volume of commercial electronic mail" was "growing," generating an "increasing number of consumer complaints." Laws of 1998, ch. 149, § 1.

14. While it's been nearly three decades since CEMA's enactment, the problems caused by unsolicited commercial email, *i.e.* spam email, have grown exponentially.

15. The problems, however, are not limited to email content. Subject lines of emails are framed to attract consumers' attention away from the spam barrage to a message that entices consumers to click and, ultimately, *purchase*.

16. In 2003, the United States Congress found that "[m]any senders of unsolicited commercial electronic mail purposefully include misleading information in the messages' subject lines in order to induce the recipients to view the messages." 15 U.S.C. § 7701(a)(8).

17. In 2012, one study estimated that Americans bear "costs of almost $20 billion annually" due to unsolicited commercial email. Justin M. Rao & David H. Reiley, *The Economics of Spam*, 26 J. of Econ. Perspectives 87, 88 (2012).

18. Even when bulk commercial email marketers are operating under color of consumer

AMENDED CLASS
ACTION COMPLAINT – 3

STRAUSS BORRELLI PLLC
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611-4501
TEL. 872.263.1100 • FAX 872.863.1109
straussborrelli.com

consent, the reality is that "[m]ost privacy consent"—especially under the "notice-and-choice" approach predominant in the United States—"is a fiction." Daniel J. Solove, *Murky Consent: An Approach to the Fictions of Consent in Privacy Law*, 104 Boston Univ. L. Rev. 593, 596 (2024).

19. Consumers therefore routinely "consent" to receive flurries of commercial emails which they did not meaningfully request and in which they have no genuine interest.

20. This includes emails sent to consumers from businesses with which they have no prior relationship—by virtue of commercial data brokers and commercial data sharing agreements.

21. Simply conducting the routine affairs of daily life often exposes consumers to unanticipated and unwanted volumes of commercial email. "Nowadays, you need an email address for everything from opening a bank account to getting your dog's nails trimmed, and … [o]nce you hand over your email address, companies often use it as an all-access pass to your inbox: Think of shopping websites that send account updates, deals, 'we miss you' messages, and holiday promotions throughout the year. It's too much." Kaitlyn Wells, *Email Unsubscribe Services Don't Really Work*, N.Y. Times Wirecutter (Aug. 19, 2024), https://perma.cc/U8S6-R8RU/.

22. The Legislature presciently intended CEMA to "provide some immediate relief" for these problems by prohibiting among other things commercial emails that "contain untrue or misleading information in the subject line." Laws of 1998, ch. 149, § 1.

23. CEMA thereby protects Washington consumers against the "harms resulting from deceptive commercial e-mails," which "resemble the type of harms remedied by nuisance or fraud actions." *Harbers v. Eddie Bauer, LLC*, 415 F. Supp. 3d 999, 1008 (W.D. Wash. 2019).

24. CEMA's "truthfulness requirements" increase the costs of sending deceptive commercial emails and thereby reduce their volume. *Heckel*, 143 Wn. 2d at 836.

25. CEMA's "truthfulness requirements" thereby advance the statute's aim of

AMENDED CLASS
ACTION COMPLAINT – 4

Strauss Borrelli PLLC
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611-4501
TEL. 872.263.1100 • FAX 872.863.1109
straussborrelli.com

protecting consumers "from the problems associated with commercial bulk e-mail" while facilitating commerce "by eliminating fraud and deception." *Id.*

26. CEMA "mean[s] exactly what it says": in "broad" but "patently clear" language, CEMA unambiguously prohibits "sending Washington residents commercial e-mails that contain *any* false or misleading information in the subject lines of such e-mails." *Certification from U.S. Dist. Ct. for W. Dist. of Wash. in Brown v. Old Navy, LLC*, 567 P.3d 38, 44, 46–47 (Wash. 2025).

27. CEMA's protections do not depend on whether any email was (really or fictively) solicited by consumers, nor on whether consumers relied on any false or misleading statement contained in its subject line. *See Harbers*, 415 F. Supp. 3d at 1011.

28. The statute's only concern is to suppress false or misleading information in the subject line of commercial emails. *See Brown*, 567 P.3d at 44–45.

**B.    The subject lines of Tommy Bahama's marketing emails make false time scarcity claims.**

29. One common way online marketers "manipulate consumer choice by inducing false beliefs" is to create a false sense of urgency or to falsely claim that consumers' time to act is scarce. Fed. Trade Comm'n, *Bringing Dark Patterns to Light* 4 (2022), https://perma.cc/847M-EY69/; *see also* U.K. Competition & Mkts. Auth., *Online Choice Architecture—How Digital Design Can Harm Competition and Consumers* 26 (2022), https://perma.cc/V848-7TVV/.

30. The FTC has identified the "False Limited Time Message" as one example of false time scarcity claims, in which the marketer creates "pressure to buy immediately by saying the offer is good only for a limited time or that the deal ends soon—but without a deadline or with a meaningless deadline that just resets when reached." *Bringing Dark Patterns to Light*, *supra* para. 29, at 22.

AMENDED CLASS
ACTION COMPLAINT – 5

STRAUSS BORRELLI PLLC
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611-4501
TEL. 872.263.1100 • FAX 872.863.1109
straussborrelli.com

31. "False or misleading scarcity claims can change the behaviour of consumers." *Online Choice Architecture, supra* para. 29, at 27.

32. Representations about the timing and duration of sales, discounts, and other special offers are fundamentally representations about prices, and such representations matter to ordinary consumers. *See, e.g.*, Huiliang Zhao *et al.*, *Impact of Pricing and Product Information on Consumer Buying Behavior with Consumer Satisfaction in a Mediating Role*, 12 Frontiers in Psychology 720151 (2021), *available at* https://pmc.ncbi.nlm.nih.gov/articles/PMC8710754/pdf/fpsyg-12-720151.pdf/.

33. False scarcity claims are psychologically effective. As "considerable evidence" suggests, "consumers react to scarcity and divert their attention to information where they might miss opportunities." *Online Choice Architecture*, *supra* para. 29, at 26.

34. Invoking this time pressure achieves a seller's aim to narrow the field of competitive products and deals, by "induc[ing] consumers to rely on heuristics (mental shortcuts), like limiting focus to a restricted set of attributes or deciding based on habit." *Id.*

35. Under time pressure, "consumers might take up an offer to minimise the uncertainty of passing it up." *Id.*

36. False time scarcity claims thus *harm consumers* by manipulatively distorting their decision-making to *their detriment—and the seller's benefit*.

37. Indeed, one 2019 study found that "customers who took timed deals rather than waiting to see wider options ended up worse off than those who waited." *Id.* at 27.

38. False time scarcity claims also harm market competition. Consumers learn to ignore scarcity claims, "meaning that when a product [or offer] is truly scarce, the seller will not be able to credibly communicate this information." *Id.*

AMENDED CLASS
ACTION COMPLAINT – 6

STRAUSS BORRELLI PLLC
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611-4501
TEL. 872.263.1100 • FAX 872.863.1109
straussborrelli.com

39. False time scarcity claims are a staple of Tommy Bahama's email scheme to compel consumers to purchase its products.

40. Tommy Bahama is practiced in this trick of luring in consumers through urgent subject headings in emails that do not reflect the true availability of the deal itself, as the following examples demonstrate.

41. For example, on August 9, 2025, Tommy Bahama sent consumers a mass commercial email with the subject line, "2 Days Only! Get Early Access to 25% OFF". The email announced a "Friends & Family" sale offering 25 percent discounts.

42. The subject line of this August 9 email was false and misleading.

43. As subsequent emails illustrate, Tommy Bahama's "Early Access" marketing is a sham designed to break up the same 25 percent off sale into two phases, allowing Tommy Bahama twice the opportunities to create time pressure in consumers' minds. In fact, consumers could receive 25 percent off as late as August 17, a week after the end of "Early Access."

44. At the end of the same day, August 9, 2025, Tommy Bahama sent consumers a mass commercial email with the subject line, "ENDS TOMORROW! Early Access to 25% Off[.]"

45. The subject line of this August 9 email was also false and misleading.

46. As noted above, no sale or promotion was in fact "ending tomorrow."

47. The next day, August 10, 2025, Tommy Bahama sent consumers a mass commercial email with the subject line, "Final Day for First Dibs & 25% OFF".

48. The subject line of this August 10 email was false and misleading.

49. As noted above, August 10 wasn't the "final day" for anything; an identical promotion would continue until August 17.

50. At the end of the same day, August 10, 2025, Tommy Bahama sent consumers a

AMENDED CLASS
ACTION COMPLAINT – 7

STRAUSS BORRELLI PLLC
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611-4501
TEL. 872.263.1100 • FAX 872.863.1109
straussborrelli.com

1  mass commercial email with the subject line, "Final Hours for Early Access to 25% OFF[.]"

2  51.     The subject line of this August 10 email was false and misleading.

3  52.     As noted above, nothing was ending on August 10 except Tommy Bahama's fictious "Early Access" to a sale it intended to and did run from August 8 through August 17.

53.     On August 11, 2025, Tommy Bahama sent consumers a mass commercial email with the subject line, "🚨 25% Off at Our Friends & Family Event". This fictitious "start" to the "Friends & Family Event" allowed Tommy Bahama to send *eight* further emails between August 11 and August 17 creating time pressure in consumers' minds with phrases like "Almost Over!", "FINAL WEEKEND", "LAST CALL!", and "Just Hours Left!"

54.     In short, Tommy Bahama's "Early Access" scheme allowed it to create two distinct peaks of time pressure, imposed by no fewer than twelve emails, for one modest nine-day sale.

55.     This fictitious "Early Access" scheme is a favorite of Tommy Bahama's. It deployed the same anti-consumer strategy at least twice in 2024 and once in 2023. The emails used to pressure consumers leveraged the following deceptive subject lines:

   a. August 9, 2023: "Just HOURS LEFT to Save 25% First ⏰ [.]"

   b. March 10, 2024: "Early Access to 25% Off Ends Tomorrow!"

   c. March 10, 2024: "Ends Tomorrow: Early Access 25% Off[.]"

   d. August 28, 2024: "Early Access to 25% Off Ends TONIGHT[.]"

   e. August 28, 2024: "Last Call! Save 25% Before Everyone Else[.]"

56.     Tommy Bahama has deployed its deceptive strategy using other promotions as well. A free shipping offer from December 2022 provides an apt example.

57.     On December 19, 2022, Tommy Bahama transmitted an email warning consumers that the shipping promotion was coming to an end. The message included the subject line: "Free

AMENDED CLASS
ACTION COMPLAINT – 8

STRAUSS BORRELLI PLLC
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611-4501
TEL. 872.263.1100 • FAX 872.863.1109
straussborrelli.com

Expedited Shipping Ends Tomorrow!"

58. Then, to emphasize the impending deadline, Tommy Bahama followed up with another email, sent on December 20, 2022, with the title: "Free Expedited Shipping Ends Today!"

59. Both emails, however, were untrue.

60. Free shipping did not end on December 20, 2022. That afternoon, Tommy Bahama sent another email but included the real deadline for the promotion. The message was titled: "Expedited Shipping EXTENDED to Dec. 21!"

61. So, despite Tommy Bahama's unambiguous warnings, consumers could still receive the free shipping offer after the announced deadline.

62. Upon information and belief, shipping costs are significant enough to influence purchasing decisions for many, if not most, consumers. An offer of time-limited free shipping entices customers to shop and pay more now lest they miss the opportunity to avoid shipping costs.

63. These and other examples of the commercial emails that Tommy Bahama has sent consumers containing subject lines with false or misleading statements are attached to this Class Action Complaint as Exhibit A.

**C.    Tommy Bahama knows when it sends emails to Washington residents.**

64. A sophisticated commercial enterprise, like Tommy Bahama, which is engaged in persistent marketing through mass email campaigns across the United States, has several ways of knowing where the recipients of its marketing emails are located. The means it employs are peculiarly within its knowledge.

65. First, the sheer volume of email marketing that Tommy Bahama engages in put it on notice that Washington residents would receive its emails. From 2022 to 2024, Tommy Bahama sent marketing emails at a rate averaging roughly (at least) 542 per year, 45 per month, and 3 every

AMENDED CLASS
ACTION COMPLAINT – 9

Strauss Borrelli PLLC
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611-4501
TEL. 872.263.1100 • FAX 872.863.1109
straussborrelli.com

other day.

66. Second, Tommy Bahama may obtain location information tied to email addresses when consumers make purchases from Tommy Bahama through digital platforms, including the Tommy Bahama website, or otherwise self-report such information to Tommy Bahama.

67. Third, Tommy Bahama may obtain location information tied to email addresses by tracking the IP addresses of devices used to open its emails, which in turn can be correlated to physical location (as illustrated, for example, by the website https://whatismyipaddress.com/).

68. Specifically, Tommy Bahama appears to use Klaviyo to manage its email marketing campaigns. Klaviyo informs Tommy Bahama where the recipients of its marketing emails are located using IP geolocation and other data extracted from recipients' interactions with Tommy Bahama, which Klaviyo tracks in detail.[1] Thus, this platform should allow Tommy Bahama to access a list of every email address that was sent a marketing email. It should also allow Tommy Bahama to determine who viewed the emails and who clicked on any links within them.

69. Fourth, Tommy Bahama may obtain location information tied to email addresses by purchasing consumer data from commercial data brokers such as Acxiom, Oracle, and Equifax, which sell access to databases linking email addresses to physical locations, among other identifiers.

70. Fifth, Tommy Bahama may obtain location information tied to email addresses by using "identity resolution" services offered by companies such as LiveRamp, which can connect consumers' email addresses to their physical locations, among other identifiers.

---

[1] *See* "Understanding when and how Klaviyo sets a profile's location," Klaviyo (July 7, 2025) (describing "how a profile's location and timezone information are set and updated"), https://help.klaviyo.com/hc/en-us/articles/115005073907/; "Understanding profiles in Klaviyo," Klaviyo (Aug. 5, 2025) ("Each individual profile features an activity log to capture a timeline of their interactions with your business," including receiving emails, opening emails, and clicking links within emails.), https://help.klaviyo.com/hc/en-us/articles/115005247088/.

AMENDED CLASS
ACTION COMPLAINT – 10

71. Sixth, Tommy Bahama may obtain information that the recipients of its marketing emails are Washington residents because that information is available, upon request, from the registrant of the Internet domain names contained in the recipients' email addresses. *See* RCW 19.190.020(2).

72. It is thus highly probable that a seller with the size and sophistication of Tommy Bahama employs not just one but several means of tying consumers' email addresses to their physical locations, at least at the state level.

### D. Tommy Bahama violated Plaintiff Haley's right under CEMA to be free from deceptive commercial emails.

73. Tommy Bahama has spammed Plaintiff Haley with commercial emails whose subject lines contain false or misleading statements in violation of her right to be free from such annoyance and harassment under CEMA.

74. For example, Haley received the series of deceptive emails relating to the August 2025 "Friends & Family" sale described at paragraphs 41–55 above, including the August 10, 2025, email described at paragraph 50 above.

75. These emails' subject lines were false or misleading in violation of CEMA for misrepresenting the timing of the deals.

76. These emails' subject lines contained false statements of fact as to the "duration or availability of a promotion." *Brown*, 567 P.3d at 47.

### V. CLASS ALLEGATIONS

77. Plaintiff brings this action under Civil Rule 23 on behalf of the following putative class ("Class"):

> All Washington citizens holding an email address to which Defendant sent or caused to be sent any email listed in Exhibit A during the Class Period.

AMENDED CLASS
ACTION COMPLAINT – 11

STRAUSS BORRELLI PLLC
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611-4501
TEL. 872.263.1100 • FAX 872.863.1109
straussborrelli.com

78. Excluded from this definition of the Class are Defendant's officers, directors, and employees; Defendant's parents, subsidiaries, affiliates, and any entity in which Defendant has a controlling interest; undersigned counsel for Plaintiff; and all judges and court staff to whom this action may be assigned, as well as their immediate family members.

79. The Class Period extends from the date four years before this Class Action Complaint is filed to the date a class certification order is entered in this action.

80. Plaintiff reserves the right to amend the Class definition as discovery reveals additional emails containing false or misleading information in the subject line that Defendant sent or caused to be sent during the Class Period to email addresses held by Washington residents.

81. The Class is so numerous that joinder of all members is impracticable because the Class is estimated to minimally contain thousands of members.

82. There are questions of law or fact common to the class, including without limitation whether Defendant sent commercial emails containing false or misleading information in the subject line; whether Defendant sent such emails to email addresses it knew or had to reason to know were held by Washington residents; whether Defendant's conduct violated CEMA; whether Defendant's violation of CEMA constituted a *per se* violation of the Consumer Protection Act, RCW 19.86.020 (CPA); and whether Defendant should be enjoined from such conduct.

83. Plaintiff's claims are typical of the Class's because, among other reasons, Plaintiff and Class members share the same statutory rights under CEMA and the CPA, which Defendant violated in the same way by the uniform false or misleading marketing messages it sent to all putative members.

84. Plaintiff will fairly and adequately protect the Class's interests because, among other reasons, Plaintiff shares the Class's interest in avoiding unlawful false or misleading

AMENDED CLASS
ACTION COMPLAINT – 12

STRAUSS BORRELLI PLLC
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611-4501
TEL. 872.263.1100 • FAX 872.863.1109
straussborrelli.com

marketing; has no interest adverse to the Class; and has retained competent counsel extensively experienced in consumer protection and class action litigation.

85. Defendant has acted on grounds generally applicable to the Class, in that, among other ways, it engaged in the uniform conduct of sending uniform commercial emails to Plaintiff and the Class, which violate CEMA and the CPA in the same way, and from which it may be enjoined as to Plaintiff and all Class members, thereby making appropriate final injunctive relief with respect to the Class as a whole.

86. The questions of law or fact common to the members of the Class predominate over any questions affecting only individual members, in that, among other ways, Defendant has violated their rights under the same laws by the same conduct, and the only matters for individual determination are the number of false or misleading emails received by each Class member and that Class member's resulting damages.

87. A class action is superior to other available methods for the fair and efficient adjudication of the controversy because, among other reasons, the claims at issue may be too small to justify individual litigation and management of this action as a class action presents no special difficulties.

## VI. CLAIMS TO RELIEF

### First Claim to Relief

### Violation of the Commercial Electronic Mail Act, RCW 19.190.020

88. Plaintiff incorporates and realleges paragraphs 1–76 above.

89. CEMA provides that "[n]o person may initiate the transmission, conspire with another to initiate the transmission, or assist the transmission, of a commercial electronic mail message … to an electronic mail address that the sender knows, or has reason to know, is held by

AMENDED CLASS
ACTION COMPLAINT – 13

STRAUSS BORRELLI PLLC
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611-4501
TEL. 872.263.1100 • FAX 872.863.1109
straussborrelli.com

a Washington resident that … [c]ontains false or misleading information in the subject line." RCW 19.190.020(1)(b).

90. Defendant is a "person" within the meaning of CEMA. RCW 19.190.010(11).

91. Defendant initiated the transmission, conspired with another to initiate the transmission, or assisted the transition of "commercial electronic mail messages" within the meaning of CEMA. RCW 19.190.010(2).

92. Defendant initiated the transmission, conspired with another to initiate the transmission, or assisted the transmission of such messages to electronic mail addresses that Defendant knew, or had reason to know, were held by Washington residents, including because Defendant knew that Plaintiff and putative members were Washington residents as such "information is available, upon request, from the registrant of the internet domain name contained in the recipient's electronic mail address." RCW 19.190.020(b)(2).

93. Defendant initiated the transmission, conspired with another to initiate the transmission, or assisted the transmission of such messages that contained false or misleading information in the subject line, as described herein, in violation of CEMA. RCW 19.190.020(1)(b).

94. For Defendant's violation of CEMA, Plaintiff is entitled to all available relief, including an injunction against further violations.

**Second Claim to Relief**

**Violation of the Consumer Protection Act, RCW 19.86.020**

95. Plaintiff incorporates and realleges paragraphs 1–76 above.

96. The CPA provides that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." RCW 19.86.020.

AMENDED CLASS
ACTION COMPLAINT – 14

STRAUSS BORRELLI PLLC
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611-4501
TEL. 872.263.1100 • FAX 872.863.1109
straussborrelli.com

97. A violation of CEMA is a *per se* violation of the CPA. RCW 19.190.030.

98. A violation of CEMA establishes all the elements necessary to bring a private action under the CPA. *Wright v. Lyft*, 189 Wn. 2d 718 (2017).

99. CEMA provides that "[n]o person may initiate the transmission, conspire with another to initiate the transmission, or assist the transmission, of a commercial electronic mail message … to an electronic mail address that the sender knows, or has reason to know, is held by a Washington resident that … [c]ontains false or misleading information in the subject line." RCW 19.190.020(1)(b).

100. Defendant is a "person" within the meaning of CEMA. RCW 19.190.010(11).

101. Defendant initiated the transmission, conspired with another to initiate the transmission, or assisted the transition of "commercial electronic mail messages" within the meaning of CEMA. RCW 19.190.010(2).

102. Defendant initiated the transmission, conspired with another to initiate the transmission, or assisted the transmission of such messages to electronic mail addresses that Defendant knew, or had reason to know, were held by Washington residents.

103. Defendant initiated the transmission, conspired with another to initiate the transmission, or assisted the transmission of such messages that contained false or misleading information in the subject line, as described herein, in violation of CEMA. RCW 19.190.020(1)(b).

104. For Defendant's violation of the CPA, Plaintiff and putative members are entitled to an injunction against further violations; the greater of Plaintiff's actual damages or liquidated damages of $500 per violation, trebled; and costs of the suit, including a reasonable attorney's fee.

## VII. JURY DEMAND

105. Plaintiff will demand a jury trial by separate document in accordance with Local

AMENDED CLASS
ACTION COMPLAINT – 15

STRAUSS BORRELLI PLLC
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611-4501
TEL. 872.263.1100 • FAX 872.863.1109
straussborrelli.com

1  Civil Rule 38(b).

## VIII. PRAYER FOR RELIEF

Plaintiff asks that the Court:

A. Certify the proposed Class, appoint Plaintiff as Class representative, and appoint undersigned counsel as Class counsel;

B. Enter a judgment in Plaintiff's and the Class's favor permanently enjoining Defendant from the unlawful conduct alleged;

C. Enter a judgment in Plaintiff's and the Class's favor awarding actual or liquidated damages, trebled, according to proof;

D. Award Plaintiff's costs of suit, including reasonable attorneys' fees; and

E. Order such further relief the Court finds appropriate.

*[Counsel signature block to follow on next page.]*

AMENDED CLASS
ACTION COMPLAINT – 16

| | | |
|---|---|---|
| 1 | DATE: December 8, 2025 | Respectfully submitted, |
| 2 | | *Samuel J. Strauss* |
| | | Samuel J. Strauss, WSBA No. #46971 |
| 3 | | Raina C. Borrelli* |
| | | **STRAUSS BORRELLI PLLC** |
| 4 | | 980 N. Michigan Avenue, Suite 1610 |
| | | Chicago, IL 60611 |
| 5 | | Tel.: (872) 263-1100 |
| | | sam@straussborrelli.com |
| 6 | | raina@straussborrelli.com |
| 7 | | Lynn A. Toops (*pro hac vice*) |
| | | Natalie A. Lyons* |
| 8 | | Ian R. Bensberg* |
| | | **COHENMALAD, LLP** |
| 9 | | One Indiana Square, Suite 1400 |
| | | Indianapolis, IN 46204 |
| 10 | | Tel.: (317) 636-6481 |
| | | ltoops@cohenmalad.com |
| 11 | | nlyons@cohenmalad.com |
| | | ibensberg@cohenmalad.com |
| 12 | | |
| | | J. Gerard Stranch, IV* |
| 13 | | Michael C. Tackeff *(pro hac vice)* |
| | | **STRANCH, JENNINGS &** |
| 14 | | **GARVEY, PLLC** |
| | | 223 Rosa L. Parks Avenue, Suite 200 |
| 15 | | Nashville, TN 37203 |
| | | Tel.: (615) 254-8801 |
| 16 | | gstranch@stranchlaw.com |
| | | mtackeff@stranchlaw.com |
| 17 | | |
| | | *Attorneys for Plaintiff* |
| 18 | | |
| | | * Applications for admission *pro hac* |
| 19 | | *vice* forthcoming |
| 20 | | |
| 21 | | |
| 22 | | |
| 23 | | |
| 24 | | |
| 25 | AMENDED CLASS ACTION COMPLAINT – 17 | |

# **CERTIFICATE OF SERVICE**

I, Samuel J. Strauss, hereby certify that on December 8, 2025, I caused the foregoing to be electronically filed with the Court using the Court's CM/ECF system which will send an electronic copy to all parties and/or their counsel of record.

DATE: December 8, 2025                Respectfully submitted,

*Samuel J. Strauss*
Samuel J. Strauss, WSBA No. #46971
**STRAUSS BORRELLI PLLC**
980 N. Michigan Avenue, Suite 1610
Chicago, IL 60611
Tel.: (872) 263-1100
raina@straussborrelli.com

AMENDED CLASS
ACTION COMPLAINT – 18

**STRAUSS BORRELLI PLLC**
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611-4501
TEL. 872.263.1100 • FAX 872.863.1109
straussborrelli.com