# EXHIBIT C

The Honorable Barbara J. Rothstein

1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9

10 | VALERIE HALEY, on her own behalf and on behalf of others similarly situated,

11 |                 Plaintiff,

No. 2:25-cv-01969-BJR

12 |     v.

**DEFENDANT TOMMY BAHAMA GROUP, INC.'S MOTION TO DISMISS COMPLAINT**

13 | TOMMY BAHAMA GROUP, INC.,

14 |                 Defendant.

15

16

17

18

19

20

21

22

23

24

25

26

27

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

# TABLE OF CONTENTS

Page

I.     INTRODUCTION ............................................................................................. 1

II.    FACTUAL ALLEGATIONS ........................................................................... 2

III.   LEGAL STANDARD ....................................................................................... 5

       A.     Rule 12(b)(6) Motion to Dismiss ........................................................ 5

       B.     The Commercial Electronic Mail Act .................................................. 6

IV.    ARGUMENT ..................................................................................................... 6

       A.     Plaintiff Fails to Allege a CEMA Violation. ....................................... 6

              1.     Plaintiff Does Not Allege She Received Seven Emails in Exhibit A .......................................................................... 7

              2.     The Remaining Four Email Subject Lines Are Not False or Misleading ................................................................. 7

              3.     Plaintiff Does Not Adequately Allege Tommy Bahama Knew or Had Reason to Know Plaintiff Was Located or Resided in Washington. ............................................................. 8

       B.     CAN-SPAM Preempts Plaintiff's Broad Application of CEMA. ...................... 10

              1.     CEMA's Attempt to Regulate *Misleading* Subject Lines Cannot Survive CAN-SPAM Preemption. .......................... 11

              2.     CEMA's Strict Liability Framework Cannot Survive CAN-SPAM Preemption. ............................................................ 13

                     a.     Plaintiff Cannot Allege Knowledge. ............................. 14

                     b.     Plaintiff Cannot Allege Materiality. ............................. 14

                     c.     Plaintiff Cannot Allege Any Adverse Effect. ............... 15

       C.     CEMA Is Unconstitutional Both As Applied and Facially Because It Directly Controls Interstate Commerce. ................................ 15

              1.     CEMA Impermissibly Applies to Conduct Occurring Wholly Outside of Washington State. .......................................... 17

              2.     The Washington Supreme Court Tacitly Acknowledged CEMA Cannot Prohibit Wholly Out of State Conduct. ............. 19

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

3.    CEMA Is Invalid As Applied. ...................................................20

4.    CEMA Is Facially Invalid. .......................................................21

D.    CEMA Excessively Burdens Interstate Commerce. ...........................................22

1.    CEMA Attempts to Regulate an Issue of National Concern. .................22

2.    Washington's Interest in Regulating Email Is Minimal. ........................23

E.    Because Plaintiff's CEMA Claim Fails, the Court Should Dismiss the CPA
      Claim That Relies on It. ....................................................................................23

F.    Actual and Treble Damages Are Not Available. .................................................24

**V.    CONCLUSION** ...........................................................................................25

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

## I.    INTRODUCTION

Plaintiff Valerie Haley ("Plaintiff") brings this action under the Washington Commercial Electronic Mail Act ("CEMA") based on purportedly misleading subject lines in commercial emails she does not allege she read, opened, or materially relied upon. Plaintiff alleges that Defendant Tommy Bahama Group, Inc.'s ("Tommy Bahama") emails providing two-day "early access" to a promotion and supplying a promo code were misleading because Tommy Bahama later provided general access to that same promotion.

Tommy Bahama seeks dismissal of Plaintiff's claims under Rule 12(b)(6) with prejudice for the following reasons:

**First**, Plaintiff fails to allege that Tommy Bahama sent emails with misleading subject lines. On their face, the emails accurately announced the duration of the general access sale and the duration of the two-day early access to that sale. The "early access" emails, sent during the two-day window preceding the general sale, offered a distinct benefit: a promo code allowing the recipient to "[s]hop and save two days before everyone else."

**Second**, Plaintiff fails to allege any facts supporting her bare, speculative conclusion that Tommy Bahama knew or had reason to know that her email address belonged to a Washington resident, as required to state a claim under CEMA.

**Third**, CEMA, as applied here, is preempted by the Controlling the Assault of Non-Solicited Pornography and Marketing Act ("CAN-SPAM"), which regulates commercial email nationwide. 15 U.S.C. §§ 7704(a)(1)–(2). CAN-SPAM preempts any state law, such as CEMA, that expressly regulates the same issues, 15 U.S.C. § 7707(b)(1), with a narrow exception for state laws that "prohibit[] falsity or deception" in commercial emails. *Id.* § 7707(b)(1). Because Plaintiff alleges at most "*misleading*" information in commercial email subject lines, her CEMA claim falls outside CAN-SPAM's narrow preemption exception. Separately, Plaintiff's allegations fall short of "falsity or deception" because they seek to impose strict liability without alleging key elements of materiality, knowledge, or harm required to evade preemption.

DEFENDANT'S MOTION TO DISMISS COMPLAINT - 1
No. 2:25-cv-01969-BJR

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

*Fourth*, CEMA is unconstitutional as applied and facially, given it both directly controls and excessively burdens interstate commerce. Because Plaintiff fails to allege she was in Washington when she received the emails at issue, her application of CEMA unconstitutionally "directly controls commerce occurring wholly outside the boundaries of [Washington] State." *Healy v. Beer Inst., Inc.*, 491 U.S. 324, 336 (1989). And because it is infeasible for out-of-state entities to weed out individuals currently located *or* residing in Washington, and thereby avoid Washington's regulation, CEMA facially creates a de facto nationwide standard for commercial email, unconstitutionally and excessively burdening interstate commerce.

*Fifth*, because Plaintiff's Consumer Protection Act ("CPA") claim is premised entirely on her failing CEMA claim, the Court should dismiss both claims.

*Finally*, Plaintiff fails to allege any facts supporting her claim for actual damages or treble damages.

## II.      FACTUAL ALLEGATIONS

Tommy Bahama is a Delaware company with its principal place of business in Georgia. Dkt. 2 Ex. 1.[1] Tommy Bahama was founded in 1992 as an island-inspired brand now encompassing retail stores, restaurants, and a clothing business known for celebrating bright colors and bold patterns. As part of its apparel business, Tommy Bahama periodically announces promotions for discounts on select products.

Plaintiff alleges she is a Washington consumer who received emails from Tommy Bahama with subject lines that "employ various tactics to create a false sense of urgency in consumers' minds." *See* Compl. ¶ 4. Plaintiff challenges 11 emails allegedly sent to consumers between August 2023 and August 2025, but she only alleges receipt of the August 2025 emails.

---

[1] The Complaint alleges that Tommy Bahama is a Washington based corporation (Compl. ¶ 11), but the Court can take judicial notice of "the Washington Secretary of State's business information for [Tommy Bahama] page" reflecting Tommy Bahama's "principal place of business" in Georgia. *See Heinz v. Amazon.com Inc.*, 2024 WL 2091108, at *3 (W.D. Wash. 2024). "Courts routinely take judicial notice of information contained in the public records maintained by the Secretary of State of the State of Washington." *Id.*

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

*Id.* ¶ 64, Ex. A. Copies of the emails are attached to the Declaration of Lauren Rainwater ("Rainwater Decl.") at Exs. A–E.[2]

Plaintiff challenges a series of emails she received relating to Tommy Bahama's August 2025 "Friends & Family" sale. Compl. ¶ 50.

On **August 9, 2025**, Tommy Bahama sent emails advertising an "Early Access" promotion where customers with the promo code have the opportunity to be among the first to shop Tommy Bahama's "Friends & Family" sale, before it is available to the general public. Compl. ¶ 39. The challenged subject lines state: "2 Days Only! Get Early Access to 25% OFF," and "ENDS TOMORROW! Early Access to 25% Off." *Id.* ¶¶ 39, 42. The body of the emails describe the Early Access event, along with the promo code required to participate. Rainwater Decl. Ex. A.



[2] Although the Court need not rely on these exhibits in ruling on this Motion, these exhibits may be properly considered as they are incorporated by reference in the Complaint and subject to judicial notice. *See infra* at Section IV.

DEFENDANT'S MOTION TO DISMISS COMPLAINT - 3
No. 2:25-cv-01969-BJR

The body explains that the promo code allows the recipient to "[s]hop and save two days before everyone else!". *Id.* Ex. A at 1. On their face, the emails announce "Early Access" to a promotion and correctly represent that early access runs for two days. *Id.*

Although the emails indicate that **Early Access** was limited to two days, Plaintiff alleges the emails were false and misleading because "no sale or promotion was in fact 'ending tomorrow'" and "consumers could receive 25 percent off as late as August 17, a week after the end of 'Early Access.'" Compl. ¶¶ 41, 44.

On **August 10, 2025,** Tommy Bahama sent emails with subject lines reminding customers that the Early Access to its Friends & Family sale will end that same day, August 10. The subject lines state: "Final Day for First Dibs & 25% OFF" and "Final Hours for Early Access to 25% OFF." *Id.* ¶¶ 45, 48. Again, the body of the emails contain the promo code required to participate in the Early Access promotion. Rainwater Decl. Ex. B.

Although Plaintiff claims that the subject lines are false and misleading, she concedes that "August 10 wasn't the 'final day' for anything … except [for] Tommy Bahama's … '**Early Access**' to a sale." Compl. ¶ 47, 50 (emphasis added). But that is what the August 10 email subject lines conveyed: the Early Access *promotion* ends two days later as advertised.

Between **August 11 and August 17, 2025**, Tommy Bahama sent emails announcing its Friends & Family sale. *Id.* ¶ 51; Rainwater Decl. Exs. C–E. Unlike the early access sale emails, the emails announcing the general access Friends & Family sale do not provide an exclusive promo code. *Id.* Exs. A–B. The body of each email indicates that the Friends & Family sale runs through Sunday (August 17, 2025). *Id.* Exs. C, E at 1, 9. As advertised, on Sunday, August 17, 2025, Tommy Bahama sent an email marking the last day of the sale with the subject line: "Last Day for 25% Off." *Id.* Ex. D.

Plaintiff alleges that the early access promotions in 2023 and 2024 followed a similar pattern. Compl. ¶¶ 53–54 (identifying emails "deploy[ing] the same … strategy"). In other words, for each promotion, Plaintiff appears to allege that Tommy Bahama announced early access to a promotion with an accompanying exclusive promo code, and later opened the

promotion up to all consumers. However, Plaintiff does not allege that she received the challenged emails sent in 2023 and 2024. And although Plaintiff alleges that she received the August 2025 emails, she does not allege she ever read or opened the emails, or made any purchases in reliance on them.

Plaintiff further speculates that Tommy Bahama knows where email recipients reside because it "may" have "location information tied to email addresses when consumers make purchases from Tommy Bahama through digital platforms," track IP addresses, purchase consumer data, or identify email recipients through marketing platforms. *Id.*. ¶¶ 57–63. But Plaintiff makes no allegation that Tommy Bahama actually knew or had reason to know that she was a Washington resident at the time she received the emails, or that she was in Washington when she allegedly received the emails.

Plaintiff brings a claim for the violation of the CPA premised on the alleged CEMA violations. *Id.* ¶¶ 79–95. Plaintiff seeks to certify a class of Washington residents "holding an email address to which Defendant sent or caused to be sent any email listed in Exhibit A" within that past four years without regard to whether those email subject lines were false or misleading. *Id.* ¶¶ 68–71. She further seeks the greater of actual pecuniary losses or statutory damages of $500 for each purportedly false or misleading email, treble damages, and attorneys' fees. *Id.* ¶ 95.

### III.    LEGAL STANDARD

#### A.    Rule 12(b)(6) Motion to Dismiss.

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain sufficient factual allegations "to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A complaint can be lacking for one of two reasons: (i) absence of a cognizable legal theory, or (ii) insufficient facts under a cognizable legal claim." *In re Hawaiian & Guamanian Cabotage Antitrust Litig.*, 754 F. Supp. 2d 1239, 1244 (W.D. Wash. 2010), *aff'd*, 450 F. App'x 685 (9th Cir. 2011). The Court need not "accept as true allegations that are merely

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001), *amended on denial of reh'g*, 275 F.3d 1187 (9th Cir. 2001).

On a motion to dismiss, a court may consider materials outside the complaint where the complaint incorporates those materials into the pleading by reference. *Wilson v. Playtika, Ltd.*, 349 F. Supp. 3d 1028, 1041–42 (W.D. Wash. 2018). "Even if a document is not attached to a complaint, it may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). Because the complaint incorporates the challenged emails, it is therefore proper for the court to consider the emails when ruling on the instant motion.

**B.    The Commercial Electronic Mail Act.**

CEMA is a Washington statute that imposes liability on any "person" who initiates or conspires to initiate the transmission of an email "from a computer located in Washington or to an electronic mail address that the sender knows, or has reason to know, is held by a Washington resident that[] … [c]ontains false or misleading information in the subject line." RCW 19.190.020(1), (1)(b). Although CEMA does not authorize a private right of action, *see Wright v. Lyft, Inc.*, 189 Wn.2d 718, 727 (2017), such a violation is a *per se* violation of the CPA, *see* RCW 19.190.030(1), 19.190.100, 19.86 *et seq.*

**IV.    ARGUMENT**

**A.    Plaintiff Fails to Allege a CEMA Violation.**

Plaintiff does not (because she cannot) allege facts to show: (1) she received seven of the eleven emails in Exhibit A; (2) the remaining four email subject lines were false or misleading; or (3) Tommy Bahama knew or had reason to know Plaintiff was in Washington when she received the email or is a Washington resident. Plaintiff's CEMA claim should be dismissed accordingly.

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

### 1.     Plaintiff Does Not Allege She Received Seven Emails in Exhibit A.

Plaintiff purports to represent a class of people to whom Tommy Bahama "sent or caused to be sent any email listed in Exhibit A during the Class Period." Compl. ¶ 68. But Plaintiff does not allege she received the 2023 or 2024 emails. *Id.* ¶ 65. She thus cannot assert claims under CEMA based on them, *cf.* RCW 19.190.040 (providing for "[d]amages to the recipient"), and Tommy Bahama need not address them further.

### 2.     The Remaining Four Email Subject Lines Are Not False or Misleading.

As for the remaining four emails, Plaintiff fails to allege the requisite "false or misleading information" for any of the challenged emails. *See* RCW 19.190.020(1)(b). The challenged emails thus cannot support CEMA violations.

**August 9 Through August 10, 2025 Emails.** Plaintiff alleges that the emails sent on August 9 and 10, 2025 are false and misleading because they create a false sense of urgency, misrepresent the timing of the deals, and "do not reflect the true availability of the deal itself." Compl. ¶¶ 38–50, 66–67. But the August 9 and 10 emails—which include an early access code in the body of the emails—unambiguously and correctly offered a two-day opportunity for consumers to be the first to shop Tommy Bahama's discounted inventory before the start of the Friends & Family sale.

Plaintiff contends that offering "early access" to a promotion is a "sham designed to break up the same 25 percent off sale into two phases." *Id.* ¶ 41. Although "consumers could receive 25 percent off as late as August 17, a week after the end of 'Early Access,'" *id.*, the "early access" emails—sent during the two-day window preceding the general sale—offered a distinct benefit: a promo code allowing the recipient to "[s]hop and save two days before everyone else." Rainwater Decl. Ex. A. This Court may "draw on its judicial experience and common sense" to conclude that early (and exclusive) access is an independent benefit, even if the same sale later opens up more broadly. *See Iqbal*, 556 U.S. at 679; *see also Kinney v. Amazon.com, Inc.*, 2024 WL 867072, at *2–3 (N.D. Ill. 2024) (dismissing complaint challenging sufficiency of "early access sale" and noting that plaintiff "was able to participate in exclusive

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

sales like Early Access Day sales by becoming an Amazon Prime member—just as he was promised—and did purchase a television at an exclusive discount").

Regardless, on their face, the August 9 and 10 emails accurately announced the duration of the two-day early access to the Friends & Family sale. Tommy Bahama's representations that "early access" was ending was accurate because each subject line made clear that "early access"—not the general sale—was ending. Compl. ¶ 39 ("2 Days Only! Get **Early Access** to 25% OFF"); *id.* ¶ 42 ("ENDS TOMORROW! **Early Access** to 25% Off"); *id.* ¶ 45 ("Final Day for **First Dibs** & 25% OFF"); *id.* ¶ 48 ("Final Hours for **Early Access** to 25% OFF") (emphasis added).

Because the subject lines of the August 9, 2025 and August 10, 2025 emails correctly and unambiguously advertised early access and its duration, the emails cannot support a CEMA violation.

**August 11 through August 17, 2025 Emails**. While Plaintiff alleges that the Friends & Family sale had a "fictitious start" and that Tommy Bahama sent emails between August 11 through 17, 2025 with subject lines that "creat[ed] time pressure in consumers' minds," she fails to identify a single email showing that Tommy Bahama misrepresented the availability and duration of both promotions. Compl. ¶ 51. Nor does Plaintiff claim that Tommy Bahama failed to provide the advertised 25% discount during the Early Access or Friends & Family sale. *Id.* Accordingly, the August 11 through 17 emails cannot support a CEMA violation.

### 3.    Plaintiff Does Not Adequately Allege Tommy Bahama Knew or Had Reason to Know Plaintiff Was Located or Resided in Washington.

Plaintiff's CEMA claim also fails because Plaintiff does not allege Tommy Bahama knew or had reason to know ***Plaintiff's*** email address belonged to a Washington resident or someone located in Washington, as required for her CEMA claim. RCW 19.190.020(1) (email must be sent from a computer in Washington or the recipient must be a Washington resident).[3] Plaintiff merely speculates that the "sheer volume" of Tommy Bahama's email marketing meant it knew

---

[3] Plaintiff does not allege that the emails at issue were sent from a computer located in Washington.

DEFENDANT'S MOTION TO DISMISS COMPLAINT - 8
No. 2:25-cv-01969-BJR

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

some recipients were in Washington, or it knew addresses from online purchases, or that it tracked IP addresses, or bought or could have requested the data. Compl. ¶¶ 55–63. This unsupported speculation is not enough to state a claim.

*First*, Plaintiff makes no attempt to tie her conclusory assertion of the "volume" of Tommy Bahama's email to her own residency, let alone explain how this establishes how Tommy Bahama could tie any particular email address to Washington.

*Second*, even assuming that Tommy Bahama receives IP addresses from online purchases or opening emails, *id.* ¶¶ 57–58, Plaintiff does not allege she made any purchase on Tommy Bahama's website nor does she allege that she opened the emails. *See generally*, *id.*

*Third*, even if Tommy Bahama could access Plaintiff's IP addresses through Klaviyo or other means and link it to her email, courts have repeatedly cast doubt on the reliability of using IP addresses for geolocation purposes. *See Gutierrez v. Converse Inc.*, 2024 WL 2106952, at *17 (C.D. Cal. 2024) ("The fact that Defendant may have access to chat users' IP addresses and certain chat users' shipping addresses does not mean that they are in a position to make a determination as to where the chat users were located when they used the chat feature."); *Malibu Media, LLC v. Doe*, 2014 WL 2615351 (S.D. Fla. 2014) (declining to rely solely on plaintiff's assertions that jurisdiction and venue were appropriate based on a geolocation of the defendant's IP address, and ordering plaintiff to show cause why such reliance might be appropriate). Finally, it is not reasonable to ask retailers to use IP addresses to attempt to determine the residency of a recipient of an email. *See Gutierrez*, 2024 WL 2106952, at *17 ("Plaintiff concedes that Defendant is not in a position to make the legal determination of residency with respect to chat users" even if Defendant could rely on IP addresses to determine location).

*Finally*, Plaintiff's remaining datapoints reference her speculative and conclusory assertions that Tommy Bahama "may" purchase or obtain the data through a third-party company or the email's domain registrant. Compl. ¶¶ 59–61. Plaintiff has not plausibly alleged Tommy Bahama receives or could receive residence data through these means. *See Iqbal*, 556 U.S. at 678

DEFENDANT'S MOTION TO DISMISS COMPLAINT - 9
No. 2:25-cv-01969-BJR

1    ("[T]he plausibility standard … asks for more than a sheer possibility that a defendant has acted

2    unlawfully.").

3           Because Plaintiff fails to plausibly allege that Tommy Bahama knew, or had reason to

4    know, that her email address was held by a Washington resident, she fails to allege any CEMA

5    violation.

6           **B.     CAN-SPAM Preempts Plaintiff's Broad Application of CEMA.**

7           Even if Plaintiff's allegations were sufficient, CAN-SPAM preempts Plaintiff's CEMA

8    claim based on allegedly "misleading" subject lines with no alleged adverse effect. Over 20

9    years ago, Congress enacted CAN-SPAM with the express purpose of "creat[ing] a national

10   uniform standard regarding spam control." *Beyond Sys., Inc. v. Kraft Foods, Inc.*, 777 F.3d 712,

11   717 (4th Cir. 2015) (citing 15 U.S.C. § 7701(a)(11)). Congress recognized that businesses faced

12   numerous "disparate" state statutes targeting spam, such as CEMA, that "impose[d] different

13   standards and requirements." 15 U.S.C. § 7701(a)(11). Because email addresses do "not specify

14   a [recipient's] geographic location," it is "extremely difficult" for businesses like Tommy

15   Bahama to both identify and comply with a specific state's laws. *Id.* In place of the former

16   "patchwork" of disparate state statutes, CAN-SPAM created a comprehensive "code of conduct

17   to regulate commercial e-mail messaging practices," *Gordon v. Virtumundo*, 575 F.3d 1040, 1048

18   (9th Cir. 2009)—including prohibiting, false, deceptive, and misleading email content, *see* 15

19   U.S.C. §§ 7704(a)(1)–(2)—and "broadly preempt[ed] state regulation of commercial e-mail with

20   limited, narrow exception," *Virtumundo*, 575 F.3d at 1061.

21          CAN-SPAM excepted from preemption only state laws that "prohibit[] falsity or

22   deception in any portion of a commercial electronic mail message or information attached

23   thereto." 15 U.S.C. § 7707(b)(1). For two separate reasons, CEMA does not fall within this

24   narrow preemption exception:

25          ***First***, the preemption exception allows states to regulate emails that are "false or

26   deceptive." It does not allow states to regulate emails that are simply "misleading" as is the case

27   here.

DEFENDANT'S MOTION TO DISMISS COMPLAINT - 10
No. 2:25-cv-01969-BJR

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

*Second*, the Ninth Circuit's interpretation of CEMA clarifies that laws like CEMA that function as strict liability statutes—punishing the sender regardless of whether the allegedly misleading subject line was knowing or material or had an adverse effect—are preempted. *See id.* § 7704(a)(2); *cf. Virtumundo*, 575 F.3d at 1054.

### 1. CEMA's Attempt to Regulate *Misleading* Subject Lines Cannot Survive CAN-SPAM Preemption.

CAN-SPAM's preemption exception allows states to regulate false or deceptive email subject lines. 15 U.S.C. § 7707(b)(1). It does not allow states to regulate misleading subject lines. *Id.* As the Ninth Circuit explained, "the word 'deception' certainly denotes something more than immaterial inaccuracies or inadvertent mistakes …." *Virtumundo*, 575 F.3d at 1062; *see also Omega World Travel, Inc. v. Mummagraphics, Inc.*, 469 F.3d 348, 354 (4th Cir. 2006) (noting "'deception' requires more than bare error" and that it is "one of the several tort actions based upon misrepresentations."). Misleading is something less. It is more akin to statements that simply "represent [information] incorrectly:" or "give an … imperfect or misleading representation." *Virtumundo*, 575 F.3d at 1059. Indeed, many misleading statements are neither deceptive nor literally false. *See, e.g., Cascade Yarns, Inc. v. Knitting Fever, Inc.*, 2011 WL 3471476, at *4 (W.D. Wash 2011) ("When an advertisement is not literally false, but is misleading, 'proof that the advertising actually conveyed the implied message and thereby deceived a significant portion of the recipients becomes critical.'"). As for the difference between false and misleading information, the United States Supreme Court recently recognized: "[F]alse and misleading are two different things. … [B]asic logic dictates that at least some misleading statements are not false." *Thompson v. United States*, 604 U.S. 408, 413 (2025).

CAN-SPAM's statutory framework supports this distinction. It is "a cardinal principle of statutory construction that [courts] must give effect, if possible, to every clause and word of a statute." *Williams v. Taylor*, 529 U.S. 362, 404 (2000) (quotation omitted). And "the doctrine of *expressio unius est exclusio alterius* 'as applied to statutory interpretation creates a presumption

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

that when a statute designates certain … things, or manners of operation, all omissions should be understood as exclusions.'" *Silvers v. Sony Pictures Entm't, Inc.*, 402 F.3d 881, 885 (9th Cir. 2005). Congress used the terms "false," "misleading," and "deceptive" separately and distinctly throughout CAN-SPAM. *See, e.g.*, 15 U.S.C. §§ 7701(2), (8) (separately describing "fraudulent or deceptive" messages and messages with "misleading information in the … subject lines"); *id.* § 7704(a)(1) ("Prohibition of false or misleading transmission information"), *id.* § 7704(a)(2) ("Prohibition of deceptive subject headings"); *id.* § 7705 ("Businesses knowingly promoted by electronic mail with false or misleading transmission information"). And it chose ***not*** to include "misleading" in CAN-SPAM's savings clause. *Id.* § 7707(b)(1) (saving only state laws "prohibit[ing] falsity or deception"). "False/falsity," "deception," and "misleading" thus cannot be viewed as synonymous, and CAN-SPAM cannot be interpreted to have saved from preemption state laws like CEMA regulating more than falsity or deception.

Here, to the extent the email subject lines run afoul of CEMA, they can at most be characterized as misleading. *See supra* Section IV.A.2; *Thompson*, 604 U.S. at 414 ("'false' means 'not true'"). Plaintiff's claims boil down to an allegation that the emails could cause confusion regarding the promotion's duration. There is no allegation that the statements in the subject lines are objectively false. At most, Plaintiff alleges the statements created a "false sense of urgency." Compl. ¶ 4. These alleged "imperfect" descriptions of the promotion can at most be characterized as misleading—not false or deceptive.[4] As a result, Plaintiff's claims based on these email subject lines cannot survive preemption. This is consistent with the Ninth Circuit's recent decision in *Virtumundo*, which rejected an attempt to expand CAN-SPAM's preemption exception to a "misrepresent[ation]" regarding the identity of the sender because a simple

---

[4] Even if Plaintiff had alleged the email subject lines were false, Plaintiff's claim still could not survive CAN-SPAM preemption. CEMA's prohibition of "false" information is not coextensive with CAN-SPAM's preemption exception for "falsity." *Virtumundo* recognized that "'false' 'is potentially ambiguous', since the word may mean either 'erroneous, incorrect' or 'purposely deceptive.'" 575 F.3d at 1062. But "[r]eading 'falsity' in conjunction with 'deception,' which connotes a type of tort action based on misrepresentations," the Ninth Circuit determined that "falsity" refers to "traditionally tortious or wrongful conduct." *Id.* That is, merely being inaccurate (i.e. false or misleading) was insufficient to evade preemption. *See id.* at 1063–64.

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

misrepresentation does not "rise[] to the level of 'falsity or deception.'" *Virtumundo*, 575 F.3d at 1063–64. Plaintiff's claims regarding allegedly misleading information are preempted.

### 2. CEMA's Strict Liability Framework Cannot Survive CAN-SPAM Preemption.

Under CAN-SPAM, states are prohibited from creating laws that govern commercial emails that are more burdensome on commercial entities than CAN-SPAM. *See id.* at 1063. As the Ninth Circuit explained: "It would be logically incongruous to conclude that Congress endeavored to erect a uniform standard but simultaneously left states and local lawmakers free to manipulate that standard to create more burdensome regulation." *Id.* To determine whether a state law is more burdensome than CAN-SPAM, the Ninth Circuit began by looking at what CAN-SPAM requires. *Id.* To allege a CAN-SPAM violation for deceptive subject headings, a party must—at a minimum—allege the sender (1) had "actual knowledge, or knowledge fairly implied on the basis of objective circumstances," (2) that the statement at issue concerned "a material fact." 15 U.S.C. § 7704(a)(2) ("Prohibition of deceptive subject headings"). And for any violation of CAN-SPAM, a party must allege that (3) the email "adversely affected" the recipient. *Virtumundo*, 575 F.3d at 1054 & n.12 (emphasis added)*; cf.* 15 U.S.C. §§ 7706(f)(1), (g)(1). The court then went on to explain that to avoid preemption, a state law must—at a minimum—require proof of these same elements. Stated differently, a state law claim must advance certain elements of "traditional tort theories such as claims arising from fraud or deception," or at least consistent with those required to assert a claim under CAN-SPAM. *Virtumundo*, 575 F.3d at 1063.

To allow a claim like Plaintiff's to proceed under CEMA without, at a minimum, alleging these basic elements CAN-SPAM requires would improperly allow Washington to create a more burdensome, strict liability scheme for commercial entities. Plaintiff's inability to allege knowledge, materiality, or an adverse effect is an inability to allege deception and cannot survive CAN-SPAM preemption.

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

### a.    Plaintiff Cannot Allege Knowledge.

CAN-SPAM requires a sender to have "***actual knowledge, or knowledge fairly implied*** on the basis of objective circumstances, that a subject heading of the message would be likely to mislead a recipient." 15 U.S.C. § 7704(a)(2) (emphasis added). It would be "incongruous" to allow a claim under CEMA without these basic allegations. *See Virtumundo*, 575 F.3d at 1063. Plaintiff must allege Tommy Bahama knew the subject lines were false or misleading when it sent the emails. *Adams v. King County*, 164 Wn.2d 640, 662 (2008). As explained above, *supra* Section IV.A, Plaintiff fails to do so.

### b.    Plaintiff Cannot Allege Materiality.

CAN-SPAM also requires the subject lines be material. *Virtumundo*, 575 F.3d at 1062 (requiring more than "immaterial inaccuracies or omissions"). As the Ninth Circuit has held, any broader construction would "create 'an exception to preemption that swallows the rule and undermines the regulatory balance that Congress established.'" *Id.* at 1063 (alterations omitted) (quoting *Omega*, 469 F.3d at 356). And not only must the subject lines be material generally, they must have been material to ***Plaintiff***. Plaintiff does not and cannot allege the subject lines are either.

***First***, Plaintiff fails to allege any false or misleading email subject lines, let alone ***materially*** false or misleading emails. To the extent the subject lines could be creatively misconstrued as misleading under Washington law, such a tortured interpretation would at most amount to a mere technicality, and precisely the kind of disparate and technical requirement that CAN-SPAM was enacted to prevent.

***Second***, for Plaintiff's claims to survive, she must, at a minimum, demonstrate that the allegedly false or misleading subject lines were material ***to her***. *Elcon Constr., Inc. v. E. Wash. Univ.*, 174 Wn.2d 157, 167 (2012) (materiality absent because alleged misstatements were not material ***to the plaintiff***); *Martin v. Miller*, 24 Wn. App. 306, 309 (1979) (analyzing whether "representations were ***material to the plaintiffs' decision*** to enter into a purchase and marketing agreement with the defendant") (emphasis added); *Hendrix ex rel. United States v. J-M Mfg. Co.*,

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

76 F.4th 1164, 1169 & n.5 (9th Cir. 2023) (focusing on whether the alleged misstatement was "**material to [the plaintiff's] decision-making**") (emphasis added); *Brummett v. Wash.'s Lottery*, 171 Wn. App. 664, 678 (2012) (advertisement claiming tickets were "going fast" was not "something of material importance") (internal quotation marks and citation omitted). She does not.

Plaintiff does not allege that she read the subject lines and was induced to make a purchase. Instead, she alleges a hypothetical consumer who reads the email subject lines might be "entice[d] … to engage with Tommy Bahama's marketing efforts for fear of missing out." Compl. ¶ 5. This is insufficient to allege materiality as to Plaintiff.

### c.    Plaintiff Cannot Allege Any Adverse Effect.

Finally, for a private right of action under CAN-SPAM, the statute requires "a showing that the identified concerns are linked in some meaningful way to unwanted spam and, in turn, represent **actual harm**," i.e., an adverse effect. *Virtumundo*, 575 F.3d. at 1054 (emphasis added). Plaintiff does not plead that she "suffered" any form of actual harm or cognizable damages. Instead, she alleges that receipt of the email alone constitutes an injury. But merely receiving a misleading email does not "represent actual harm." *See id*. By asserting a claim without any allegation of injury, Plaintiff seeks to use CEMA to impose a strict liability schedule for sending commercial emails, which is grossly incongruous with CAN-SPAM.

CAN-SPAM differentiates between falsity, deception, and misleading information, and saves from preemption only state laws that prohibit falsity or deception. Because the subject lines were not false and Plaintiff cannot allege the CAN-SPAM elements of deception or that the email subject lines had an adverse effect, Plaintiff's claim is merely that the subject lines were "misleading" and thus is preempted by CAN-SPAM.

### C.    CEMA Is Unconstitutional Both As Applied and Facially Because It Directly Controls Interstate Commerce.

In addition to being preempted, Plaintiff's CEMA claim is unconstitutional—as applied and on its face. Under our constitutional framework, states may not directly regulate conduct that

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

takes place wholly outside of its borders. *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 422 (2003). The Commerce Clause provides that "Congress shall have power ... [t]o regulate Commerce ... among the several States." U.S. Const., art. I, § 8, cl. 3. Under that clause, states are prohibited from directly "control[ling] commerce occurring wholly outside [its] boundaries." *Healy*, 491 U.S. at 335–36; *see also*, *e.g.*, *Brown-Forman Distillers Corp. v. N.Y. State Liquor Auth.*, 476 U.S. 573, 579 (1986); *Edgar v. MITE Corp.*, 457 U.S. 624, 642–43 (1982) (plurality op.). Similarly, the Due Process Clause limits a state's ability to regulate conduct occurring extraterritorially. *See Watson v. Emps. Liab. Assurance Corp.*, 348 U.S. 66, 70 (1954) (recognizing "the due process principle that a state is without power to exercise 'extra territorial jurisdiction,' that is, to regulate and control activities wholly beyond its boundaries"); *Home Ins. Co. v. Dick*, 281 U.S. 397, 407–08 (1930).

In a decision concerning the reach of the dormant Commerce Clause, the U.S. Supreme Court recently reaffirmed the longstanding principle that laws may not "*directly* regulate[] out-of-state transactions by those with *no* connection to the State." *Nat'l Pork Producers Council v. Ross*, 598 U.S. 356, 374, 376 n.1 (2023). As the Supreme Court noted, this principle may not be a "Commerce Clause question as much as one testing the territorial limits of state authority under the Constitution's horizontal separation of powers." *Id.*

CEMA violates this core constitutional principle. It directly regulates commercial emails in which both the sender and recipient are located outside of Washington state, and is therefore unconstitutional as applied to such emails. "[A] statute that directly controls commerce occurring wholly outside the boundaries of a State exceeds the inherent limits of the enacting State's authority and is invalid regardless of whether the statute's extraterritorial reach was intended by the legislature." *Healy*, 491 U.S. at 336. "States may not mandate compliance with their preferred policies in wholly out-of-state transactions ...." *Rocky Mountain Farmers Union v. Corey*, 730 F.3d 1070, 1103 (9th Cir. 2013).

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

To state a valid claim, Plaintiff must therefore—at a minimum—allege that she received the emails while she was located in Washington state. Plaintiff fails to do so, and her claims must therefore be dismissed.

**1.      CEMA Impermissibly Applies to Conduct Occurring Wholly Outside of Washington State.**

CEMA's regulation of commercial emails does not limit its application to companies sending emails *from* Washington, and does not apply only to emails *received in* Washington. Instead, it states that: "No person may initiate the transmission … of a commercial electronic mail message from a computer located in Washington or to an electronic mail address that the sender knows, or has reason to know, is held by a Washington resident …." RCW 19.190.020(1).

CEMA thus imposes restrictions on a company incorporated in Delaware and based in Georgia (like Tommy Bahama) on its transmission of emails to a person in New York (for example) who is nonetheless a Washington resident. Application of CEMA to these circumstances is a textbook definition of a state statute exceeding the territorial limits of its authority.

In *Sam Francis Found. v. Christies, Inc.*, a California statute attempted to circumvent the dormant Commerce Clause by regulating art sales where "the seller resides in California *or* the sale takes place in California." 784 F.3d 1320, 1323 (9th Cir. 2015). Because the statute applied to sales that occurred entirely outside of California—so long as the seller was a California resident—the Ninth Circuit determined that "the state statute facially regulates a commercial transaction that 'takes place wholly outside of the State's borders.' Accordingly, it violates the dormant Commerce Clause." *Id.*

The Ninth Circuit further explained why tying the statute's application to the *residency* of the seller—rather than the *location of the conduct*—had the effect of regulating conduct occurring entirely out of the state:

> [I]f a California resident has a part-time apartment in New York, buys a sculpture in New York from a North Dakota artist to furnish her apartment, and later sells the sculpture to a friend in New York, the Act requires the payment of a royalty to the North Dakota artist—even if the sculpture, the artist, and the buyer never traveled to, or had any connection with, California. We easily conclude that

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

the royalty requirement, as applied to out-of-state sales by California residents, violates the dormant Commerce Clause.

*Id*. at 1323.

Courts have also repeatedly held that where, as here, a state statute directly regulates communications, the communications must be initiated from or received in the state. In *Hartman v. United Bank Card, Inc.*, 291 F.R.D. 591, 599 (W.D. Wash. 2013) ("*Hartman II*"), this Court declined to interpret the Washington Automatic Dialing and Announcing Device statute as applying "to commercial solicitations … that were **both initiated and received outside the State of Washington**" because such an interpretation "would render the statute unconstitutional by virtue of the dormant Commerce Clause." (Emphasis added). *Cf. Hartman v. United Bank Card Inc.*, 2012 WL 4758052, at *15 (W.D. Wash. 2012) ("*Hartman I*") (denying class certification because "there is no way, based on the spreadsheet alone, to determine if Defendants' calls to telephone numbers with Washington prefixes were made to telephones physically located in Washington… the court recognizes that telephone numbers are no longer tethered to a specific geographic locale but can [be] transported to virtually any place in the world").

This Court reaffirmed the position in *Booth v. Appstack, Inc.*, 2015 WL 1466247, at *14 (W.D. Wash. 2015) (same); *see also Publius v. Boyer-Vine*, 237 F. Supp. 3d 997, 1025 (E.D. Cal. 2017) (plaintiff was likely to win dormant Commerce Clause challenge over California statue that "prohibits [out-of-state party] from transferring the specified information to any other entity, 'through any medium,' even if [plaintiff] and the recipient have no connection to California or the transfer 'takes place wholly outside of the State's borders'"); *Am. Librs. Ass'n v. Pataki*, 969 F. Supp. 160, 163, 169 (S.D.N.Y. 1997) (New York Law that made it illegal "to initiate or engage in [obscene] communication with a person who is a minor" on the internet "represents an unconstitutional projection of New York law into conduct that occurs wholly outside New York").

Conversely, where courts have upheld anti-spam statutes facing constitutional challenges, they have done so only after interpreting those statutes as applying to emails that were sent from or received in the state. *See Ferguson v. Friendfinders, Inc.*, 94 Cal. App. 4th 1255 (2002) (holding that a state law regulating unsolicited email applied only to California residents receiving email

through equipment located in California and thus did not regulate conduct outside California); *MaryCLE, LLC v. First Choice Internet, Inc.*, 166 Md. App. 481, 525–26 (Md. Ct. Spec. App. 2006) (upholding a law prohibiting the transmission of email containing false information to a Maryland email address, on the grounds that the regulation applied only to transactions that used a computer in Maryland or were sent to an address in Maryland). But those statutes did not rely on a residency hook, as CEMA does. CEMA regulates the transmission of emails to "an electronic mail address that the sender knows, or has reason to know, is held by a Washington resident" irrespective of whether the recipient is in Washington at the time the email is received. RCW 19.190.060(1).

Further compounding the issue, under CEMA, residency is keyed to whether "information is available, upon request, from the registrant of the internet domain name contained in the recipient's electronic mail address," which may have outdated or inaccurate residency information. *See* RCW 19.190.020(2). In such cases, CEMA purports to directly regulate, for example, the conduct of Tommy Bahama sending commercial emails to a California resident who created an email address while attending college in Washington twenty years ago.

As applied to emails that are both sent and received wholly outside of Washington's borders, CEMA is therefore unconstitutional. *See Sam Francis Found.*, 784 F.3d at 1323.

### 2. The Washington Supreme Court Tacitly Acknowledged CEMA Cannot Prohibit Wholly Out of State Conduct.

Although the Washington Supreme Court rejected a dormant Commerce Clause challenge to CEMA more than two decades ago, in *State v. Heckel*, 143 Wn.2d 824 (2001), that decision is distinguishable. It also acknowledged that applying CEMA to prohibit conduct occurring wholly outside of Washington would pose a "jurisdictional question"—one the court expressly declined to answer. *Id*. at 839.

CEMA was enacted in 1999 and *Heckel* was decided in 2001, when most people received emails at their home computers via dial-up internet, meaning their residence was synonymous with the location at which they received emails. *See* House Bill Report HB 275 ("Many consumers

connect to the Internet through interactive computer services that charge fees for time spent utilizing a **dial-up connection** to their computer server.") (emphasis added).[5] The legislative history reflects that CEMA was intended to apply only to emails either sent to or received from a computer "located in Washington." *See* Senate Bill Report SB 6434 ("Transmissions of unsolicited electronic mail (e-mail) messages **from a computer located in Washington or to a computer located in Washington** ….") (emphasis added).[6] It is through this lens that the *Heckel* court rejected the dormant Commerce Clause challenge on the grounds that "there is no 'sweeping extraterritorial effect.'" *Heckel*, 143 Wn.2d at 838–39 (quoting *Edgar*, 457 U.S. at 642).

Moreover, the *Heckel* court did not rule out the possibility that CEMA might violate the dormant Commerce Clause if applied to wholly extraterritorial conduct. Although the court dismissed the mere "hypothetical of a Washington resident who downloads and reads the deceptive spam while in Portland or Denver," it did so because the "hypothetical mistakenly presumes that the Act must be construed to apply to Washington residents when they are out of state, a construction that **creates a jurisdictional question** not at issue in this case." *Id.* at 839 (emphasis added). In other words, *Heckel* tacitly acknowledged that if CEMA applies to messages that are sent and received wholly outside of Washington, it could exceed the inherent limits of Washington state's authority.

### 3.    CEMA Is Invalid As Applied.

CEMA is invalid as applied because Tommy Bahama is a Delaware corporation with its principal place of business in Georgia, Dkt. 2 Ex. 1, and Plaintiff does not allege that she was **actually within** Washington when she received any of the emails at issue or that the emails were **sent from** Washington. Indeed, Plaintiff's Complaint is conspicuously silent as to her location at the time she received the challenged emails. As a result, Plaintiff's Complaint seeks to apply

---

[5] Available online at: https://lawfilesext.leg.wa.gov/biennium/1997-98/Pdf/Bill%20Reports/House/2752.HBR.pdf?q=20250912085527

[6] Available online at: https://lawfilesext.leg.wa.gov/biennium/1997-98/Pdf/Bill%20Reports/Senate/6434.SBR.pdf?q=20250916135445

DEFENDANT'S MOTION TO DISMISS COMPLAINT - 20
No. 2:25-cv-01969-BJR

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

CEMA to prohibit an email initiated and received outside of Washington, which would "regulate directly … commerce wholly outside the State," *Edgar*, 457 U.S. at 643, and thus exceeds the "territorial limits of state authority" under the Constitution and federal caselaw interpreting it, *Nat'l Pork Producers Council*, 598 U.S. at 376 n.1 (describing *Edgar*). Plaintiff's claim is unconstitutional and must be dismissed.

### 4.    CEMA Is Facially Invalid.

CEMA is also facially invalid, because, as drafted, "no set of circumstances exists under which [CEMA] would be valid." *S.D. Myers, Inc. v. City & Cnty. Of S.F.*, 253 F.3d 461, 467 (9th Cir. 2001)). On its face, CEMA regulates conduct by a non-Washington company directed toward a Washington resident, without regard to whether the transaction occurred in Washington. A statute is not immune to facial attack merely because the "statute could be applied to purely in-state commercial transactions, which a state may constitutionally regulate." *Nat'l Shooting Sports Found. v. Bonta*, 718 F. Supp. 3d 1244, 1257 (S.D. Cal. 2024), *reconsideration denied*, 2025 WL 1012326 (S.D. Cal. 2025). Indeed, "by that logic, a state law policing economic activity everywhere in the world—including within the state—would be immune to facial attack." *Id.*

Rather, like the statute challenged in *Sam Francis Found. v. Christies, Inc.*, CEMA regulates transactions occurring out of state merely because they involve a Washington resident and therefore "facially regulates a commercial transaction that 'takes place wholly outside of the State's borders.'" 784 F.3d at 1323. Although CEMA could be applied to purely in-state commercial transactions, which a state may constitutionally regulate, the statute as currently written, relies on a residency hook to regulate commercial transactions, and therefore results in regulating transactions outside of Washington. CEMA is therefore facially invalid. *See id.*; *see also Ass'n for Accessible Medicines v. Bonta*, 766 F. Supp. 3d 1020, 1033 (E.D. Cal. 2025) (invalidating statute that "on its face may result in the extraterritorial regulation of settlement agreements in which none of the parties, the agreement, or the pharmaceutical sales have any connection with California" and limiting application to in-state settlement agreements).

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

**D.     CEMA Excessively Burdens Interstate Commerce.**

CEMA independently violates the dormant Commerce Clause because it imposes its stringent standards regulating commercial emails nationwide contrary to the intent of Congress, excessively burdening interstate commerce. In determining whether to strike down a law on this basis, courts look at (1) whether the state law attempts interstate regulation of a subject of national concern, and (2) the local benefits, if any, of the law. *See Pike v. Bruce Church Inc.*, 397 U.S. 137, 142 (1970). Under both factors, CEMA cannot survive.

**1.     CEMA Attempts to Regulate an Issue of National Concern.**

"Generally speaking, the Commerce Clause protects against inconsistent legislation arising from the projection of one state regulatory regime into the jurisdiction of another State." *Nat'l Collegiate Athletic Ass'n v. Miller*, 10 F.3d 633, 639 (9th Cir. 1993) (quoting *Healy*, 491 U.S. at 336–37) (finding statute unconstitutional under the dormant Commerce Clause where it would force the plaintiff to adopt Nevada's regulations for use in all states).

CAN-SPAM underscores the excessive burden on interstate commerce that disparate state statutes regulating commercial email, like CEMA, present. Through CAN-SPAM, Congress expressed concern that "since an electronic mail address does not specify a geographic location, it can be extremely difficult for law-abiding businesses to know with which of these disparate statutes they are required to comply." 15 U.S.C. § 7701(a)(11).

CEMA purports to resolve this issue by limiting its application to email addresses that "*the sender knows, or has reason to know*, [are] held by a Washington resident." RCW 19.190.020(1) (emphasis added). However, the statute defines "reason to know" so broadly that, in practice, an out-of-state commercial entity is forced to assume that CEMA's standards apply to every email it sends: "[A] person knows that the intended recipient of a commercial electronic mail message is a Washington resident if that information is available, upon request, from the registrant of the internet domain name contained in the recipient's electronic mail address." *Id*. at (2). Contacting an email registrar to ascertain the residency on record for each and every email— regardless of which state that email address is registered in—and awaiting responses before

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

sending thousands of emails simultaneously, is an onerous burden that cannot be dismissed as a "burden of noncompliance." *Contra Heckel*, 143 Wn.2d at 836–37 (concluding, pre CAN-SPAM that CEMA does not excessively burden interstate commerce).

CEMA's attempt to regulate interstate spam commercial email, an issue of national concern covered by CAN-SPAM, fundamentally conflicts with the dormant Commerce Clause.

### 2.    Washington's Interest in Regulating Email Is Minimal.

Washington's local interest in independently regulating misleading email subject lines is comparatively minimal against the backdrop of an existing federal standard addressing the same type of conduct. *See* 15 U.S.C. §§ 7704(a)(1)–(2) (prohibiting false, deceptive, and misleading email content). While Washington's legislature may have a legitimate interest in regulating such conduct within its borders, the legislature could readily draft a more appropriately narrowed statute encompassing emails sent from "a computer located in Washington or to" a computer "that the sender knows, or has reason to know," *is located in* Washington. *Contra* RCW 19.190.020(1).

Tommy Bahama faces the uncertainty that it may be forced to apply CEMA's restrictions nationwide in order to comply. This is the very "projection of one state regulatory regime into the jurisdiction of another State" that the dormant Commerce Clause protects against. *Healy*, 491 U.S. at 337. As such, CEMA is facially invalid under the dormant Commerce Clause. *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 449 n.6 (2008) (holding that a statute is facially invalid where, as here, "a substantial number of its applications are unconstitutional, judged in relation to [its] plainly legitimate sweep" (cleaned up)).

### E.    Because Plaintiff's CEMA Claim Fails, the Court Should Dismiss the CPA Claim That Relies on It.

Finally, the Court should dismiss Plaintiff's claim under the CPA because the Complaint does not allege a CEMA violation.

To state a CPA claim, Plaintiff must allege "(1) an unfair or deceptive act or practice that (2) affects trade or commerce and (3) impacts the public interest, and (4) th[at] plaintiff[s]

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

1  sustained damage to business or property that was (5) caused by the unfair or deceptive act or

2  practice." *See Keodalah v. Allstate Ins. Co.*, 194 Wn.2d 339, 349–50 (2019). Plaintiff does not

3  allege any of the elements of an independent CPA claim; instead, the CPA claim is predicated

4  exclusively on the alleged CEMA violation. *See* Compl. ¶¶ 86–95.

5         Because Plaintiff fails to allege a violation under CEMA, her CPA claim fails. *See, e.g.*,

6  *Chen v. Sur La Table*, 655 F. Supp. 3d 1082, 1093 (2023) (CPA claim properly dismissed where

7  plaintiff failed to state CEMA violation) (Martinez, J.); *Virtumundo*, 575 F.3d at 1065–66

8  ("Because [plaintiff's] CEMA claims fail as a matter of law, his CPA claims, to the extent

9  grounded in CEMA violations, are likewise inadequate and were properly dismissed.").

10        **F.     Actual and Treble Damages Are Not Available.**

11        CEMA provides for statutory damages or actual damages, whichever are greater.

12  RCW 19.190.040. Although Plaintiff seeks both statutory and actual damages, she fails to allege

13  ***any*** facts suggesting that she sustained actual damages. Plaintiff does not allege that she opened

14  or read the emails. Nor does she allege that she was deceived by the emails and purchased a

15  product that she otherwise would not have. Accordingly, any claim for actual damages should be

16  dismissed. *See Grizzly Gen. Contractors Corp. v. Kitsap Pub. Health Dist.*, 2025 WL 81384, at

17  *7 (W.D. Wash. 2025) (complaint "is nothing more than a 'formulaic recitation' of the element

18  of a CPA [claim] devoid of any factual fodder. Its failure to … allege how it was injured … is

19  fatal to [the] claim."); *see also Paris v. Steinberg & Steinberg*, 828 F. Supp. 2d 1212, 1217

20  (W.D. Wash. 2011) (dismissing CPA claim because the complaint "pa[id] only lip-service to

21  damages" and "lack[ed] any factual allegations that would support a finding of actual

22  damages.").

23        "The case law is clear that treble damages may only be based upon actual damages."

24  *Sign-O-Lite Signs, Inc. v. DeLaurenti Florists, Inc.*, 64 Wn. App. 553, 565 (1992); *see also*

25  *Mason v. Mortg. Am., Inc.*, 114 Wn.2d 842, 855 (1990) ("treble damages [under the CPA] are

26  based upon 'actual' damages awarded"); *St. Paul Fire & Marine Ins. Co. v. Updegrave*, 33 Wn.

27  App. 653, 660 (1983) (reversing award of treble damages because "the failure to show actual

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

monetary damages … precludes the recovery of treble damages"). As set forth above, the Complaint does not plead any facts indicating that Plaintiff sustained actual damages. Accordingly, the request for treble damages should be dismissed.

## V.    CONCLUSION

For the reasons outlined above, the Court should dismiss the Complaint with prejudice, as Plaintiff cannot cure the fundamental defects in her claims. *See United States v. Corinthian Colleges*, 655 F.3d 984, 995 (9th Cir. 2011).

## VI.    CERTIFICATION OF CONFERRAL

Per Section II.F of the Court's Standing Order, Dkt. 3, Tommy Bahama's counsel conferred with Plaintiff's counsel on Friday, November 14, 2025 regarding the relief sought through this Motion. Plaintiff opposes the relief Tommy Bahama seeks.

DATED this 17th day of November, 2025.

DAVIS WRIGHT TREMAINE LLP

By: */s/ Lauren B. Rainwater*
    Lauren B. Rainwater, WSBA #43625
    Rachel Herd, WSBA #50339
    Emily Parsons, WSBA #57061

    920 Fifth Avenue, Suite 3300
    Seattle, WA 98104-1610
    Telephone: 206-622-3150
    E-mail: laurenrainwater@dwt.com
    E-mail: rachelherd@dwt.com
    E-mail: emilyparsons@dwt.com

    *Attorneys for Defendant Tommy Bahama Group, Inc.*

    I certify that this memorandum contains 8,389 words, in compliance with the Local Civil Rules and the Court's order (Dkt. 14).

1

2

3

4

5

6

7

8

The Honorable Barbara J. Rothstein

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9

10

11

12

13

14

| | |
|---|---|
| VALERIE HALEY, on her own behalf and on behalf of others similarly situated, | No. 2:25-cv-01969-BJR |
| Plaintiff, | [PROPOSED] ORDER GRANTING DEFENDANT TOMMY BAHAMA's MOTION TO DISMISS COMPLAINT |
| v. | |
| TOMMY BAHAMA GROUP, INC., | |
| Defendant. | |

15    THIS MATTER came before the Court on Defendant Tommy Bahama Group, Inc.'s

16 ("Tommy Bahama") Motion to Dismiss Complaint ("Motion"). The Court has considered

17 Tommy Bahama's Motion, Plaintiff's Opposition, and Tommy Bahama's Reply, as well as all

18 papers and pleadings on file in this matter.

19    Being fully advised, the Court now ORDERS that Tommy Bahama's Motion to

20 Dismiss is **GRANTED**, and all claims for relief against Tommy Bahama are **DISMISSED**

21 with prejudice.

22    IT IS SO ORDERED.

23    Dated this _____ day of _____, 2025.

24

25

_____
HON. BARBARA J. ROTHSTEIN
DISTRICT COURT JUDGE

26

27

[PROPOSED] ORDER GRANTING TOMMY BAHAMA'S
MOTION TO DISMISS COMPLAINT (No. 2:25-cv-01969-BJR) - 1

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

1    Presented by:

2    DAVIS WRIGHT TREMAINE LLP

3

4    By s/ *Lauren B. Rainwater*
     Lauren B. Rainwater, WSBA #43625
5    Rachel Herd, WSBA #50339
     Emily Parsons, WSBA #57061
6    920 Fifth Avenue, Suite 3300
     Seattle, WA  98104-1610
7    Telephone: 206-622-3150
     E-mail: laurenrainwater@dwt.com
8    E-mail: rachelherd@dwt.com
     E-mail: emilyparsons@dwt.com
9

10   *Attorneys for Defendant*
     *Tommy Bahama Group, Inc.*
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax